v. Rodriguez-Sanchez, Mr. Eller, sorry. Good morning, Your Honors. Counsel, may it please the Court. When Agustin Rodriguez-Sanchez appeared before the district court for the revocation of his supervised release, the district court approached the proceedings with the belief that the original sentence the court had imposed was an act of significant leniency. Three times during the revocation hearing, he referred to the sentence as a cream puff sentence. He twice indicated that he had referred or treated the defendant with kid gloves at the original sentencing hearing. And indicated once that it was an incredible, almost unbelievable break. That belief governed the district court in its approach to the revocation of Mr. Rodriguez-Sanchez's supervised release. As a result of that, the court geared the sentence in the case towards the maximum, ended up imposing a sentence above the recommended range of four to six months. In Courtland, this court stated that the farther the judge's sentence departs from the guidelines, the more compelling the justification, based on factors in Section 3553A that the judge must offer, in order to enable the Court of Appeals to assess the reasonableness of the sentence imposed. The problem, from our perspective, is that the court didn't explain why it imposed the sentence it did, other than to say he was not going to give the defendant another break the next time. There are two fundamental problems with the court's approach. One is that the court viewed a sentence within the guidelines as a break, sort of going against the presumption, at least the appellate presumption, that a guideline sentence is reasonable. The second is the idea that the original sentence was, in fact, a break. I'm not suggesting in any way that the sentence that was imposed was not lenient. It was time served, right? It was time served. The defendant had spent... For a sawed-off shotgun. Correct. It may very well have been a lenient sentence, but the only way a court can arrive at that conclusion is by conducting its analysis under Section 3553A. That didn't happen at the original sentencing hearing. It was a somewhat hasty proceeding. What do you mean? You've got to check off under 3553A? Because the parties were recommending... The answer to that is no, you don't have to. The court doesn't have to, but it at least has to touch on some of the factors. Because the parties in the case were recommending a time-served sentence, the defense moved the court to waive the preparation of a pre-sentence report. And the court went along with that, and in minutes following Mr. Rodriguez-Sanchez's plea, imposed the time-served sentence. No one expected Mr. Rodriguez-Sanchez to appear before the court on a supervised release revocation because everyone was of the belief that he was going to be deported. That didn't happen. Obviously, with the benefit of hindsight, maybe waiving of the pre-sentence may not have been the wisest decision. Why wasn't he deported? It's unclear, Your Honor. When he completed his time-served disposition, he was transferred to the custody of Homeland Security. For some reason unknown, it's not in the court record, he was released on a bond. He, for approximately one year while on supervised release, was reporting to his United States Probation Officer. The parties were never alerted. The government, I don't believe, had been alerted that he hadn't been removed. I certainly wasn't alerted that he had not been removed. So it's unclear why he wasn't deported, but he wasn't. After he went to North Dakota, it would be hard for them, immigration authorities, to find him to get him deported, right? Correct. And he was, we admitted, we conceded that he was absconding from his Federal supervision. So I've got the cream puff sentence, and then he absconds. So why does that make it inappropriate for the judge to add eight months to the guideline sentence? Those weren't the reasons that the court gave. I think it would have been proper for... Well, Section 3583 and Section 3553 don't indicate or they don't suggest that compensating for an original sentence is a factor to consider. They don't have to. The judge can do it on his own. You mean he's limited to only those factors? No. Well, then he can say that's why he did it. One of the problems that we have with the suggestion, and the court certainly was free to conclude that compensating for that original sentence was appropriate, but the court never conducted the original 3553 sentencing analysis at the original sentencing hearing. But as Judge Kaney said, the judge is not required to go through those factors, which in any event are extremely vague. But he has to make clear that he has reasons that are at least consistent, 3553A, for doing what he's doing. And if the initial sentence was very lenient, and then the fellow violates supervised release, then that's going to appropriately influence the sentence that he imposes for the violation. What the district court did was it geared the sentence towards the maximum. The question Judge Cliver presented was, he said something to the effect of, the real question here is whether I impose a sentence at the maximum or something just below that. I understand that the review of sentences of supervised release are entitled to a fair amount of deference, but it's not an absolutely deferential review. And the court's comments about the 8 months. Well, Your Honor, it's... When someone gets a light sentence and then misbehaves, of course it annoys the sentencing judge quite appropriately. It means you got a break and you abused it, and it just shows you're a bad person, so you get an extra sentence. Your Honor, it's nice to see you up here. I believe you authored the Castillo opinion, where the court addressed the departures from the guideline range and whether the analysis or the review of that should be done in absolute terms or relative terms. And the court indicated that it should review departures from the guidelines in relative terms. I can see that the 8-month addition to the sentence or the top of the guideline range is... The 8 months is not a significant amount in absolute terms, but it's 4 1⁄2 times greater than the bottom end of the guideline range and twice as significant almost as the top end. Relative to the conduct of the defendant. So relative to the conduct of this defendant, the extra 8 months could be entirely appropriate. Because the way you're putting it, when you say relative to the guidelines range and four times as great or something like that, that doesn't sound like the relevant relationship. That's like saying, well, you never should go more than four times above the minimum or something like that. That sounds completely arbitrary. The farther the departure from the range, the greater the explanation is required. I don't understand that. When the range is very small and you're talking about months, why is the percentage departure so important? That's what the court held in Castillo. And I believe Castillo involved a sentence that was at the lower end of the length of sentences. I see my time is up, Your Honors. The court's comments at the revocation hearing suggested that it didn't view the violations as particularly egregious. The defendant wasn't back before the court on any further criminal activity. Okay. Well, thank you very much. Ms. Dimashik. Good morning, Your Honors. May it please the court? I'm Assistant United States Attorney Bridget Dimashik from the Eastern District of Wisconsin, and I appear on behalf of the appellee, the United States of America. I'd like to start by responding to some of the comments and concerns from the panel that came up. First of all, the appellant argues that 3553A doesn't address the question of whether the original sentence imposed and whether it would be appropriate to quote-unquote compensate out of supervised release revocation hearing. And respectfully, that's wrong. 3553A-5 advises the district court to consider policy statements, and that's exactly what Sentencing Guidelines 7B1.4 is. It's a policy statement, and it directs the court to consider or rather it instructs the court that an upward departure may be warranted when a below-guideline sentence was imposed in the first instance. And in fact, to ignore this policy statement, particularly when it's raised by an attorney from the government, would be error. Second, counsel argues that the court was really focused on imposing a sentence in this case that was geared toward the maximum. And again, respectfully, I disagree because the record reflects that the district court rejected the government's proposal for a statutory max sentence, which would have been 24 months. The district court also rejected the defendant's proposal for a guideline sentence, and this is significant because it also gets to the fact that the district court considered the different types of sentences that were used in this case. I do not have it in front of me. I do have a case that I believe is very similar. I did not cite it in my brief, but I'm going to give the court the citation. It's United States v. Campbell, 525 FED APPX 465, May 10, 2013. And in that case, this court acknowledged that a re-imprisonment term that differs, quote, significantly from the sentencing commission's range warrants careful explanation from the district court. And I think that's kind of what the defense was trying to get at. And I really can't quibble with that. That's the established law in this circuit. But then also, it's clear that in this case, when the district court was imposing the re-imprisonment sentence, he really did give careful explanation. A lot of the focus of this argument has been on 7B1.4. Well, there was an explanation here that the initial sentence was a cream puff sentence. Doesn't that explain it? It does, Your Honor. But in addition, the court articulated numerous other reasons, all of them appropriate under 3553A, for imposing the sentence. The court considered the defendant's history and characteristics. Judge Colbert noted that at the time the sentence was originally imposed, the defendant had been arrested for possessing marijuana, failing to report to his probation officer, failing to leave the country despite agreeing to do so, and despite being ordered deported, and he absconded after the marshals attempted to the defendant had a history of issues, quote, with violence, weapons, and drugs. And that's at transcript 19. Because in addition to those facts that were before the judge at supervised release, the court noted that the defendant in the original case was convicted of possessing a short-barreled shotgun, as the panel has already noted, while he also had one-half ounce of powdered cocaine. He didn't say, as to his credit, he went to North Dakota? No. No. And, you know, it's, there are, there are so many facts that can be considered here, and as the panel noted, the court was not required to address them in checklist fashion. It's very clear that in addition to the flight to North Dakota, in addition to failing to report to his probation officer, being arrested with marijuana, there was a lot of factors at play here. One of them that was really important was the need to report to the court. Because the court at the original sentence believed that deterrence could be accomplished by removal from the country and entering an order of deportation, as opposed to spending time and resources having the defendant incarcerated. And what happened was, as a result of the defendant being on supervised release, it became clear that deterrence couldn't be accomplished. So unless the court has any further questions for me, I ask to respectfully reaffirm the sentence imposed by Judge Cobert. Thank you, Ms. Demasi. Thank you very much. Mr. Eller, do you have anything to say? No, Your Honor. Thank you. Were you appointed? I was. Well, we thank you for your efforts.